IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| HUGGER-MUGGER, L.L.C.,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>NETSUITE, INC.,<br><br>　　　　　Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:04-CV-592 TC |

　　　　This declaratory judgment action concerns a dispute arising out of a software licensing agreement between Plaintiff Hugger-Mugger, L.L.C. ("Hugger-Mugger") and Defendant NetSuite, Inc. ("NetSuite"). This matter comes before the court on a series of motions, first and foremost being Defendant NetSuite's Motion to Dismiss for Improper Venue or in the Alternative to Transfer for Convenience (Docket No. 4), brought pursuant to Rule 12(b)(3). Hugger-Mugger (based in Utah) filed this action in the District of Utah, but NetSuite (based in California) contends that the action should have been brought in a California court pursuant to a mandatory forum selection clause in the parties' agreement.

　　　　The other two motions pending are Hugger-Mugger's Motion to Strike Declarations Filed in Support of Defendant's Supplemental Brief and Alternative Motion Allowing Plaintiff to File Supplemental Affidavits (Docket No. 28), and Hugger-Mugger's Motion for Order Concerning Assignability of Subject License Agreement (Docket No. 25).

　　　　After a series of hearings, including an evidentiary hearing, and two sets of supplemental

briefing on NetSuite's Motion to Dismiss, the court now enters its Order. For the reasons set forth below, the court GRANTS NetSuite's Motion to Dismiss. Hugger-Mugger's Motion for Order Concerning Assignability of Subject License Agreement is DENIED, and its Motion to Strike Declarations is DENIED.

## FACTUAL BACKGROUND

The basis for NetSuite's Venue Motion is a software license agreement that, NetSuite contends, contains a mandatory forum selection clause requiring all contract disputes between the parties to be litigated in courts located in Santa Clara, California. NetSuite argues that the mandatory forum selection clause, which is set forth in an electronically accessible Terms of Service (i.e., via NetSuite's website), became part of the written software license agreement through incorporation by reference and through a "clickwrap" agreement[1] Hugger-Mugger allegedly entered into on NetSuite's website. Hugger-Mugger opposes NetSuite's motion to dismiss or transfer on the basis that it never agreed to a mandatory forum selection clause.

NetSuite is an Application Service Provider ("ASP") based in California. Generally speaking, an ASP is a third-party that manages and distributes software-based services and solutions to customers across a wide area network (e.g., the Internet) from a central data center.

---

[1] "A 'clickwrap' agreement appears when a user first installs computer software obtained from an online source or attempts to conduct an Internet transaction involving the agreement and purports to condition further access to the software or transaction on the user's consent to certain conditions there specified; the user consents to these conditions by clicking on a dialog box on the screen, which then proceeds with the remainder of the software installation or Internet transaction." Kevin W. Grierson, Annotation, Enforceability of "Clickwrap" or "Shrinkwrap" Agreements Common in Computer Software, Hardware, and Internet Transactions, 106 A.L.R. 5th 309 n.1 (2003), as quoted in Davidson & Assocs., Inc. v. Internet Gateway, 334 F. Supp. 2d 1164, 1176 (E.D. Mo. 2004).

The "central data center" which NetSuite maintains is a bank of computer servers physically located in Santa Clara County, California.

On March 31, 2004, NetSuite and Hugger-Mugger entered into a written software license agreement ("License Agreement") in which NetSuite agreed to provide Hugger-Mugger with an online business application known as NetSuite Professional ("the Service"). The License Agreement incorporated by reference certain "Terms of Service" which were posted online by NetSuite. The Terms of Service document was not physically attached to the written License Agreement, but its online location was printed in the License Agreement.

According to NetSuite, the License Agreement and the Terms of Service constitute the entire agreement between the parties. The License Agreement contains the following relevant language:

> In consideration of the license fee paid by Customer [Hugger-Mugger] and <u>subject to the terms of this agreement and the Terms of Service</u> posted at <u>www.NetSuite.com,</u> or successor Web site, NetSuite grants Customer, its employees, and agents a nonexclusive, nontransferable license to use the Service for internal business purposes. . . .
>
> This Agreement and <u>Incorporated Terms of Service</u> represent the entire agreement of the parties and may not be modified unless expressly agreed to in writing by both parties.

(<u>See</u> License Agreement, Sections 2 and 6 (emphasis added).) The Terms of Service contains the following provision:

> You [Hugger-Mugger] and NetSuite agree to submit to the personal and <u>exclusive jurisdiction</u> of the courts located within the <u>county of Santa Clara</u>, California.

(<u>See</u> Terms of Service, Section 21 (emphasis added).)

The Terms of Service document relevant to the License Agreement was posted on

NetSuite's website from at least March 30, 2004, to April 15, 2004. (Decl. of Chris Blum, attached as Ex. 1 to Def.'s Second Supplemental Br. Supp. Def.'s Mot. To Dismiss [hereinafter "Def.'s Second Supp. Br."].) In addition, it was the custom and practice of NetSuite during the time NetSuite was negotiating the License Agreement with Hugger-Mugger to provide customers with a copy of the Terms of Service if the customer so requested. (See Decl. of Mike Shea, attached as Ex. 2 to Def.'s Second Supp. Br.; Supplemental Decl. of Duncan Stewart ¶ 3, attached as Ex. 3 to Def.'s Second Supp. Br.) Hugger-Mugger never requested a copy (see Mike Shea Decl.), and a representative of Hugger-Mugger, Vice President of Marketing Constance E. Tyler, signed the License Agreement.

According to Hugger-Mugger's Complaint, NetSuite's software was not adequate for Hugger-Mugger's purposes and so Hugger-Mugger has not used, or paid for, the software. Hugger-Mugger seeks a declaratory ruling that Hugger-Mugger has no obligation to pay NetSuite for the allegedly inadequate software. NetSuite responded to the Complaint by asserting that this court does not have jurisdiction by virtue of the forum selection clause in the Terms of Service.

## ANALYSIS

The central issue the court must resolve is whether the forum selection clause in the Terms of Service is an enforceable part of the License Agreement, as is contended in NetSuite's motion to dismiss or transfer venue. If the court finds that it is, the next issue is whether the clause is mandatory and whether its language compels the court to dismiss the action or transfer it to a federal district court in Santa Clara County, California. As a threshold issue, however, the court first must address Hugger-Mugger's motion to strike the declarations of Chris Blum, Mike Shea, and Duncan Stewart, all of which were submitted in support of NetSuite's Motion to

Dismiss.

**Hugger-Mugger's Motion To Strike Declarations**

Hugger-Mugger seeks to have the declarations of Chris Blum, Mike Shea, and Duncan Stewart[2] stricken on the basis that they were submitted after the close of evidence at the May 3, 2005 evidentiary hearing and are "not based upon personal knowledge; contain opinions and conclusions, rather than facts; lack foundation and fail to produce the records and documentation upon which they are based."  (Pl.'s Mot. to Strike Decls. at 2.)  Hugger-Mugger further requests that if the court denies the Motion to Strike, Hugger-Mugger "should be given time to analyze the declarations and submit their own affidavits or other evidence to counter the post-hearing declarations submitted by defendant." (Id.)

The three declarations were submitted by NetSuite in support of its Second Supplemental Brief, after the court specifically requested simultaneous briefing on legal and factual issues from both parties.  (See May 3, 2005 Minute Entry.)  Indeed, Hugger-Mugger had its own opportunity to present evidence to the court.  Accordingly, Hugger-Mugger's objection to the declarations as being submitted after the May 3, 2005 evidentiary hearing is without merit.

As for Hugger-Mugger's objection to the declarations on the basis that they are "not based upon personal knowledge; contain opinions and conclusions, rather than facts; lack foundation and fail to produce the records and documentation upon which they are based," the

---

[2]Plaintiff refers only to the "declaration of Duncan Stewart" in its motion, but Mr. Stewart submitted two declarations (the first dated October 21, 2004, and the second dated June 13, 2005).  Given the context of the motion and the declarations, and the arguments made by Plaintiff, the court presumes that Plaintiff meant to refer to the Supplemental Declaration of Duncan Stewart (signed on June 13, 2005).

court finds Hugger-Mugger's objection to be without merit for the reasons set forth in NetSuite's opposition memorandum.

Finally, the court denies Hugger-Mugger's request to submit additional declarations. Hugger-Mugger had an opportunity to submit a simultaneous brief with supporting documents, including declarations, if it so desired.

Plaintiff's Motion to Strike Declarations Filed in Support of Defendant's Supplemental Brief and Alternative Motion Allowing Plaintiff to File Supplemental Affidavits is DENIED.

**NetSuite's Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer Venue**

NetSuite challenges venue on the basis that an enforceable mandatory forum clause in the agreement between the parties precludes litigation in Utah. NetSuite brings its motion to dismiss pursuant to Rule 12(b)(3)[3] of the Federal Rules of Civil Procedure, 28 U.S.C. § 1406(a) (requiring court to dismiss or transfer case filed in wrong venue),[4] and 28 U.S.C. § 1404(a) (allowing for transfer based on convenience of parties).[5]

The burden lies with Hugger-Mugger, the party challenging the enforceability of a forum

---

[3]Rule 12(b)(3) allows for a motion to dismiss for improper venue. "A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3)." Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 956 (10th Cir. 1992).

[4]"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district in which it could have been brought." 28 U.S.C. § 1406(a).

[5]"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

selection clause. Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004); New Moon Shipping Co. v. MAN B&W Diesel, AG, 121 F.3d 24, 29 (2d Cir. 1997). At least initially, a plaintiff responding to a 12(b)(3) motion to dismiss may rely on the well pled facts of its complaint to satisfy its burden. Pierce v. Shorty Small's of Branson Inc., 137 F.3d 1190, 1192 (10th Cir. 1998). However, a court considering a 12(b)(3) motion may consider facts outside the pleadings. Murphy, 362 F.3d at 1137. If the defendant provides evidence that controverts the allegations in the complaint, the plaintiff must produce admissible evidence to counter the defendant's evidence. See id.; see also Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004) ("To survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a *prima facie* showing of venue.").

If the parties' evidence raises a genuine dispute of a material fact, the court must resolve any conflict in favor of the non-movant, unless the court holds an evidentiary hearing, upon which the court may weigh the evidence and assess credibility to resolve the factual disputes. Murphy, 362 F.3d at 1139-40; New Moon Shipping, 121 F.3d at 29. In the case of Hugger-Mugger and NetSuite, because the parties raised genuine issues of material fact regarding proper venue,[6] the court held an evidentiary hearing on May 3, 2005. Because an evidentiary hearing was held, Hugger-Mugger, as non-movant, is no longer entitled to any favorable factual inferences. New Moon Shipping, 121 F.3d at 29.

---

[6]According to affidavits produced by the parties, NetSuite asserts that Jarom Lee logged on to NetSuite's website in an effort to activate the software for Hugger-Mugger and affirmatively clicked on a portion of the computer screen that gave Hugger-Mugger's consent to the Terms of Service. Mr. Lee denies that he ever clicked on anything agreeing to the Terms of Service. In fact, Hugger-Mugger contends that a representative of NetSuite clicked on the acceptance button for Hugger-Mugger without Hugger-Mugger's knowledge or consent.

Federal law governs the court's determination of whether to give effect to a forum selection clause. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 32 (1988). But, in this case, before the court can determine whether the forum selection clause is enforceable, the court must determine whether the clause is part of the agreement between the parties. That requires application of California law. (See License Agreement, Section 6 ("This Agreement shall be governed in accordance with the internal laws of the State of California.").) See also Chan v. Drexel Burnham Lambert, Inc., 178 Cal. App. 3d 632, 637, 640 (Cal. Ct. App. 1986) (holding that federal law applied to arbitration clause enforceability analysis, but that California law applied to threshold issue of whether valid agreement was formed).

**Was the forum selection clause part of the terms of the License Agreement?**

NetSuite contends that there are two ways in which Hugger-Mugger agreed to the forum selection clause. First, NetSuite contends that, under California law, the License Agreement's incorporation by reference of the Terms of Service was sufficient to make the forum selection clause a binding part of the License Agreement as a matter of law. Second, according to NetSuite, the evidence shows that the "clickwrap" agreement, which included the Terms of Service, was executed by Hugger-Mugger on NetSuite's website and later ratified by Hugger-Mugger.

### Incorporation by reference

As noted above, The License Agreement contains the following relevant language:

> In consideration of the license fee paid by Customer [Hugger-Mugger] and <u>subject to the terms of this agreement and the Terms of Service</u> posted at <u>www.NetSuite.com,</u> or successor Web site, NetSuite grants Customer, its employees, and agents a nonexclusive, nontransferable license to use the Service for internal business purposes. . . .

> This Agreement and <u>Incorporated Terms of Service</u> represent the entire agreement of the parties and may not be modified unless expressly agreed to in writing by both parties.

(<u>See</u> License Agreement, Sections 2 and 6 (emphasis added).)  In California, "[a] written agreement may, by reference expressly made thereto, incorporate other written agreements; and in the event such an incorporation is made, the original agreement and those referred to must be considered and construed as one." <u>Holbrook v. Fazio</u>, 191 P.2d 123, 84 Cal. App. 2d 700, 701 (Cal. Ct. App. 1948);  <u>see also</u> <u>H.H. Bell v. Rio Grande Oil Co.</u>, 73 P.2d 662 (Cal. Ct. App. 1937) ("A written agreement may, by reference expressly made thereto, incorporate other written agreements; and in the event such incorporation is made, the original agreement and those referred to must be considered and construed as one.").

But, "[f]or the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." <u>Scott's Valley Fruit Exch. v. Growers Refrigeration Co., Inc.</u>, 184 P.2d 183, 81 Cal. App. 2d 437, 447 (Cal. Ct. App. 1947),[7] <u>quoted in</u> <u>Richards v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 64 Cal. App. 3d 899, 904 n.3 (Cal. Ct. App. 1976).  <u>See also</u> <u>Shaw v. Regents of the Univ. of Cal.</u>, 58 Cal. App. 4th 44, 54 (Cal. Ct. App. 1997) (contract may validly include another document not physically part of the contract);  <u>Chan v. Drexel Burnham Lambert, Inc.</u>, 178 Cal. App. 3d 632, 641 (Cal. Ct. App. 1986) (noting that a contract "may validly include the provisions of a document not

---

[7]Disapproved of on unrelated grounds by <u>Hischemoeller v. National Ice & Cold Storage Co. of Cal.</u>, 294 P.2d 433 (Cal. 1956).

physically a part of the basic contract" if certain facts are established). A clause not appearing in the face of the contract, such as the forum selection clause at issue here, is properly incorporated by reference when "the contract clearly refer[s] to and identifie[s] the incorporated document wherein the [forum selection] clause appear[s]." Chan, 178 Cal. App. 3d at 641-42.

Hugger-Mugger does not dispute that the License Agreement was properly executed. The court finds that Hugger-Mugger consented to the "incorporation by reference" language by virtue of voluntarily signing the License Agreement. "As a general rule, a party is bound by the provisions of an agreement which he signs, even though he does not read them and signs unaware of their existence." Id. at 641 (quoting King v. Larsen Realty, Inc., 121 Cal. App. 3d 349, 358 (Cal. Ct. App. 1981)). Moreover, the language in the License Agreement clearly and unequivocally refers to, identifies, and incorporates by reference the Terms of Service.

The only exception to the rule of incorporation is when the contract is one of adhesion. King v. Larsen Realty, Inc., 121 Cal. App. 3d 349, 358 (Cal. Ct. App. 1981). Here, the License Agreement and the Terms of Service are not contracts of adhesion. There is no evidence of coercive pressure to sign or unequal bargaining power. Accordingly, the exception does not apply.

The only issue remaining is whether the Terms of Service were known or easily available to Hugger-Mugger. NetSuite presents evidence that the Terms of Service document was available online in the form relevant to the License Agreement when the License Agreement was signed by Hugger-Mugger. Moreover, NetSuite employees have testified through affidavit that it was the usual custom and practice of the company, at the time the License Agreement was negotiated and executed, to provide the proper Terms of Service upon request by the contracting

party. Apparently Hugger-Mugger never asked for a copy of the Terms of Service, but Hugger-Mugger's purported ignorance of the provision in the Terms of Service is not an excuse in this context, where the parties were on equal footing and sufficiently sophisticated in the ways of business. Even if Hugger-Mugger did not know of the terms, the terms were readily available to it. Hugger-Mugger had the duty to read the terms of the contract and will be held accountable for the terms of the contract it admittedly signed. See, e.g., Flight Concepts Ltd. P'ship v. Boeing Co., 38 F.3d 1152, 1157 (10th Cir. 1994) ("A party cannot void a contract by claiming to be ignorant of its contents.").

The court finds that the facts of the case warrant enforcement of the Terms of Service, including the forum selection clause, as part of the License Agreement.

**Clickwrap Agreement**

In addition, NetSuite contends that Mr. Jarom Lee of Hugger-Mugger did in fact affirmatively agree to the Terms of Service by clicking on the button indicating assent. But Hugger-Mugger argues that a NetSuite employee clicked on the button without Hugger-Mugger's knowledge or consent, and even if Mr. Lee did click on the button, he did not have authority to bind Hugger-Mugger.

During the evidentiary hearing, NetSuite presented a summary of a computer log of computer transactions that supports NetSuite's assertion that Mr. Lee did in fact click on the button. Mr. Lee testified at the hearing and denied that he clicked on the button. Mr. Lee's memory of events, although he was a credible witness, simply does not stand up to reliable computer documentation of transactions, as presented by Doug Brown, whom the court found

equally credible.[8]  The court finds that Mr. Lee assented to the Terms of Service by clicking on the proper button on the computer screen.  See, e.g., Davidson & Assocs., Inc. v. Internet Gateway, 334 F. Supp. 2d 1164, 1177 (E.D. Mo. 2004) (holding that "clickwrap" agreements are enforceable under California law).  But the court's inquiry does not end here.

The next question is whether Mr. Lee had actual or ostensible authority to bind Hugger-Mugger to the Terms of Service.  The record supports the conclusion that Mr. Lee did not have actual authority to bind Hugger-Mugger.  During the evidentiary hearing, Mr. Lee specifically stated that his duties did not include the duty to contract and he did not have the authority to sign contracts and bind Hugger-Mugger.  (See Partial Tr. at 4, attached as Ex. C to Pl.'s Post-Hearing Supplemental Mem.)  NetSuite has not presented evidence to the contrary.  But if Mr. Lee had ostensible authority, as defined by California law, then his actions online would bind Hugger-Mugger.  See Cal. Civ. Code § 2334 ("A principal is bound by the acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof.").

"Ostensible authority" is defined by California statute as such authority "as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."  Cal. Civ. Code § 2317.  According to the record, Mr. Lee, who was Hugger-Mugger's I.T. Manager, was extensively involved in negotiating the transaction on behalf of Hugger-Mugger.  He was tasked with implementing NetSuite's Service at Hugger-Mugger.  Mr. Lee was

---

[8]The court overrules Hugger-Mugger's "best evidence rule" objection to the computer evidence.  The time for making such an objection was during the evidentiary hearing.  Regardless, the objection is without merit.

given authority by Hugger-Mugger to provision the account – that is, to do what was necessary to begin the implementation process. He was sufficiently authorized to be provided the "user id" and "password" to gain access to the account and to receive the "authorization number" from NetSuite. The court finds that NetSuite reasonably and in good faith believed that Mr. Lee was given authority to agree to the Terms of Service and reasonably relied on Mr. Lee's acceptance of the Terms of Service. Accordingly, the court finds that Mr. Lee had ostensible authority to accept the Terms of Service and enter into a clickwrap agreement on behalf of Hugger-Mugger, who is now bound by Mr. Lee's actions, and, in particular, is bound by the forum selection clause.[9]

**Is the forum selection clause enforceable?**

As noted above, federal law applies in the determination of whether a forum selection clause is enforceable.

Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342, 1346 (10th Cir. 1992) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)). In order to avoid enforcement of the forum selection clause, Hugger-Mugger must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). Based on the record, the court concludes that Hugger-Mugger has not met its burden.

---

[9]The court need not and therefore declines to reach the ratification issue presented by NetSuite.

Now that the court has found that the forum selection clause is enforceable, it must determine whether the clause is mandatory or permissive. Only a mandatory forum selection clause supersedes the presumption in favor of the plaintiff's choice of forum. Utah Pizza Serv., Inc. v. Heigel, 784 F. Supp. 835, 837 (D. Utah 1992). "Mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum. In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." K&V Scientific Co., Inc. v. BMW, 314 F.3d 494, 498 (10th Cir. 2002) (internal citations and quotation marks omitted). "[W]here venue is specified [in a forum selection clause] with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified [in a forum selection clause], the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." Id. at 499 (emphasis added) (internal citation and quotation marks omitted).

The forum selection clause at issue here reads as follows:

> You [Hugger-Mugger] and NetSuite agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Santa Clara, California.

(See Terms of Service, Section 21 (emphasis added).) The court finds that the forum selection clause is mandatory, particularly given the language "exclusive jurisdiction." The court also finds that because the clause specifically refers to the County of Santa Clara, it must be read to mean that venue is proper only in state courts located within the county of Santa Clara, California. According to the Tenth Circuit, a forum selection clause referring only to a specific county and not to a specific judicial district means the parties intended to have venue lie only in state court, not federal court. "For federal court purposes, venue is not stated in terms of

'counties.' Rather it is stated in terms of 'judicial districts.' See 28 U.S.C. § 1391." Excell, Inc. v. Sterling Boiler & Mechanical, Inc., 106 F.3d 318, 321 (10th Cir. 1997) (holding that the clause "[j]urisdiction shall be in the State of Colorado, and venue shall lie in the County of El Paso, Colorado" was mandatory clause designating state court in El Paso County as exclusive venue); Milk 'N' More v. Beavert, 963 F.2d 1342, 1346 (10th Cir. 1992) (holding that clause "venue shall be proper under this agreement in Johnson County, Kansas" was mandatory clause designating state court in Johnson County as exclusive venue).  Based on the holdings in Milk 'N' More and Excell, as well as the forum selection clause's specific reference to Santa Clara County, the court finds that the forum selection clause in the License Agreement is a mandatory forum selection clause requiring that the litigation be brought in state court in Santa Clara County, California.  Accordingly, NetSuite's Motion to Dismiss is GRANTED and the case before the court is dismissed without prejudice.

**Hugger-Mugger's Motion for Order Concerning Assignability of License Agreement**

In its motion, Hugger-Mugger requests "a prospective order regarding the assignment of the subject license agreement" between Hugger-Mugger and NetSuite.  (See Pl.'s Mot. for Order Concerning Assignability of Subject License Agreement at 1.)  Specifically, Hugger-Mugger says "[t]he court should . . . encourage an assignment by ordering that the agreement may be assigned, assuming a willing buyer can be located, with the net proceeds of the assignment paid to NetSuite."  (Id. at 2.)

As noted in NetSuite's opposition brief, Hugger-Mugger essentially seeks an advisory opinion which cannot properly be granted by the court.  Moreover, given the court's ruling

above, Hugger-Mugger's Motion is moot.  For these reasons, Hugger-Mugger's Motion for Order Concerning Assignability of License Agreement is DENIED.

### ORDER

For the foregoing reasons, it is hereby ORDERED that:

1. Defendant's Motion to Dismiss for Improper Venue or in the Alternative to Transfer for Convenience is GRANTED.  Specifically, the court DISMISSES Hugger-Mugger's suit WITHOUT PREJUDICE.

2. Plaintiff's Motion to Strike Declarations Filed in Support of Defendant's Supplemental Brief and Alternative Motion Allowing Plaintiff to File Supplemental Affidavits is DENIED.

3. Plaintiff's Motion for Order Concerning Assignability of Subject License Agreement is DENIED.

DATED this 12th day of September, 2005.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge